

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 10, 1951

Hon. John C. White
Commissioner
Department of Agriculture
Austin, Texas

Dear Sir:

Opinion No. V-1233

Re: Applicability of Article
1037, Section D, V.P.C.,
regulating the capacity of
containers for the sale of
milk, to the product known
as "concentrated milk."

You have requested the opinion of this office as to the applicability of Article 1037, Section D, V.P.C., to "concentrated milk," a product which is presently being marketed in Texas by dairy produce companies. You describe "concentrated milk" as follows:

"Concentrated milk consists of fluid milk evaporated down to the consistency of light cream. It may be pasteurized, homogenized and fortified with Vitamin D. To reconstitute it the consumer adds two parts of cold tap water to one part of concentrated milk."

As you indicate in your request, the dairy produce companies are proposing to market this product in one-third quart containers, so that by mixing two parts of water with the concentrate, the equivalent of a quart of whole milk will be produced. Specifically you question the legality of packaging the "concentrated milk" in one-third quart containers, in view of the provisions of Article 1037, Section D, V.P.C., which reads as follows:

"It shall be unlawful for any person to keep for the purpose of sale, offer or expose for sale, or sell, any milk or cream in bottles or other containers of any capacity other than those provided for measures of capacity for liquid in Article 5732, Chapter 7, Title 93, of the Revised Civil Statutes of Texas of 1925, to wit: the gallon, a multiple of the gallon, one-half gallon, quart, pint, one-half pint, and gill."

From the language as set out above, if "concentrated milk" is "milk" within the comprehension of the statute, then it would be illegal to package it in an odd fraction container, such as a one-third quart container.

An examination of Article 1037, V.P.C., reveals that "milk" is not specifically defined for the purpose of such statute. We find, however, that "milk" has been specifically defined for the purposes of another statutory regulation, as provided in Article 165-3, V.C.S., which pertains to the grading and standardization of the milk itself, as distinguished from the regulation of the size of containers in which it may be marketed. For the purpose of the grading regulation set out in Article 165-3, "milk" is defined as follows:

"Milk is hereby defined to be the lacteal secretion obtained by the complete milking of one or more healthy cows, excluding that obtained within fifteen days before and five days after calving, or such longer period as may be necessary to render the milk practically colostrum free; which contains not less than eight per cent (8%) of milk solids-not-fat, and not less than three and one-fourth per cent (3-1/4%) of milk fat."

That same statute also includes the following pertinent definitions:

"(J) Reconstituted or Recombined Milk. Reconstituted or recombined milk is a product resulting from the recombining of milk constituents with water, and which complies with the standards for milk fat and solids-not-fat of milk as defined herein.

". . .

"(O) Milk Products. Milk products shall be taken to mean and include cream, vitamin D milk, buttermilk, cultured buttermilk, skimmed milk, reconstituted or recombined milk, milk beverages, and skimmed milk beverages. . . ."

Although the foregoing definitions apply to a different type of regulation, we find them of value in determining the character of "concentrated milk" in the dairy industry, and we think

"concentrated milk" as defined by you would not be "milk" within the foregoing definitions.

In addition to the statutory definitions, we find a persuasive authority in the case of Commonwealth v. Boston White Cross Milk Co., 95 N.E. 85 (Mass. Sup. 1911). That case indicates that "concentrated milk" as a product in the dairy industry has been known for many years. That case involved an appeal from a criminal conviction for selling the product resulting from combining "concentrated milk" with water under a statute which penalized selling watered milk. The court held as follows:

> "It is not contended that the manufactured product of the defendant, to which it added water for reduction and sale, was natural milk as it comes from the cow. And we have searched the evidence in vain for anything upon which it could be found that this manufactured product had come to be known in the trade as milk. Certainly there is no such intimation in the testimony of the government, and that put in by the defendant is wholly to the effect that the defendant's 'concentrated milk' was a new and unique product, manufactured only since 1908, under letters patent, at a factory equipped for that purpose, shipped to the defendant's place of business in Boston, and there extended by the defendant and put upon the market only in its diluted form. . . . The fact that the word 'milk' in this statute has been construed to include cream as one of its natural components (Commonwealth v. Gordon, 159 Mass. 8, 33 N.E. 709) does not indicate that it should include also a substance produced from it by a process of manufacture with artificial appliances involving some chemical changes. The substance itself is not milk, just as butter and cheese and condensed milk are not themselves milk."

We therefore conclude that "concentrated milk," as you have defined it in your letter, is not "milk" within the requirements provided in Article 1037, Section D, V.P.C., and it may be legally sold in one-third quart containers.

## SUMMARY

The product "concentrated milk" is not "milk" within the provisions of Article 1037, Section D, V.P.C., and it may legally be sold in one-third quart containers.

APPROVED:

Ned McDaniel
State Affairs Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

DJC:rt:mf

Yours very truly,

PRICE DANIEL
Attorney General

By *Dean J. Capp*
    Dean J. Capp
      Assistant